United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Proeduca Altus, S.A. and Universidad Internacional De La Rioja, S.A., Plaintiffs, <br><br> v. <br><br> Technology Trade Group, Inc. and others, Defendants. | Civil Action No. 21-22639-Civ-Scola |

### Order on Motion to Dismiss

This matter is before the Court on the Defendants' motion to dismiss the amended complaint or, in the alternative, to stay the case. (ECF No. 24.) The Plaintiffs filed a response to the motion (ECF No. 32), and the Defendants filed a reply brief in support of the motion (ECF No. 34). After consideration of the parties' briefs and the relevant legal authorities, the Court **grants in part and denies in part** the motion. (**ECF No. 24**.)

**1. Background**

This case concerns two entities that provide postsecondary-educational services to consumers. One is based in Spain but purports to provide educational courses to students worldwide, including in South Florida where the Plaintiffs acquired a physical campus in 2019. The other is based in Florida, where the Defendants began providing educational services under the name UNIR International University beginning in 2020. The parties now compete for what are undoubtedly some of the most valuable consumers—students of higher education.

Proeduca Altus, S.A. is a Spain-based corporation and a provider of online educational services. (ECF No. 20 at ¶¶ 7, 15.) These services are provided through various universities, including UNIR SA, UNIR Mexico, and CUNIMAD. (*Id.* at ¶ 15.) The Plaintiffs use their website, www.unir.net, to promote these services throughout the world, including in the United States. (*Id.* at ¶ 24.) In connection with these services, Proeduca owns rights in trademarks, including "UNIR" and "UNIR La Universidad en Internet" (the "Marks"). (*Id.* at ¶ 17.) Proeduca has used the Marks in connection with services to U.S. consumers since 2010. (*Id.* at ¶ 20.) The Marks have been registered in various countries, but they have not been registered in the United States. (*Id.* at ¶ 16.)

This dispute arose out of Proeduca's efforts to expand its educational services into the United States. In 2019, Proeduca began offering educational services through Marconi International University ("Marconi"), based in Miami, Florida, which Proeduca acquired in March 2019. (*Id.* at ¶¶ 15, 40, 44–45.) Marconi is now a subsidiary of Proeduca and is authorized to use the Marks. (*Id.* at ¶¶ 19, 45.)

While in the process of acquiring Marconi, Proeduca met with officials from other Miami-based universities. (*Id.* at ¶ 42.) In March 2018, Proeduca's General Director of Business Development met with Defendant Technology Trade Group ("TTG") and provided a business card, which depicted the Marks. (*Id.*) At no point during this meeting did the Defendants disclose that they used a similar mark. (*Id.*)

In November 2019, approximately twenty months after the parties first met in Miami and eight months after Proeduca acquired Marconi, TTG filed an application to register the mark "UNIR International University." (*Id.* at ¶ 48.) In June 2020, Proeduca sent a cease-and-desist letter to TTG, stating that the proposed mark was likely to cause confusion because of its similarity to the Marks. (*Id.* at ¶ 52.) The Defendants did not cease use of the mark; rather, TTG later (1) registered the name UNIR International University in Florida, (2) began operating UNIR International University ("UNIR") as a branch of the Defendants' Atlantis University, and (3) received accreditation to provide four degrees through UNIR. (*Id.* at ¶¶ 13, 32, 58.) Moreover, in March 2021, the Defendants created a new website domain, www.unir.edu, to provide online educational services through UNIR. (*Id.* at ¶ 55.)

The Defendants claim that they have used a UNIR-related mark since 1975 in connection with an affiliated entity, UNIR Instituto Universitario de Tecnologia Readic ("UNIR Venezuela"), based in Maracaibo, Venezuela. (*Id.* at ¶ 30.) However, TTG has not consistently used a UNIR mark. In 2006, TTG operated a college named "UNIR College of Technology," although two years later the name was changed to Unitech College of Technology. (*Id.* at ¶¶ 34–35.) This was a precursor to what is now called Atlantis University. (*Id.* at ¶ 37.) Despite the change in names, TTG has issued a catalog every year, in which TTG has, since 2009, identified its relationship to UNIR Venezuela. (*Id.* at ¶¶ 36–37); (*see* ECF No. 24-5 at 11 (referring to Unitech College of Technology as an "affiliate school" to UNIR Venezuela).)

## 2. Legal Standards

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *See Pielage v.*

*McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

### 3. Analysis

The Defendants seek to dismiss Counts II, III, and V of the amended complaint. Moreover, the Defendants seek to dismiss the entire amended complaint as an impermissible shotgun pleading. Last, the Defendants seek to dismiss the amended complaint for failure to join an indispensable party. The Court will address each ground.

#### A. False Advertising (Count II)

The Plaintiffs' second cause of action alleges false advertising under 15 U.S.C. § 1125(a). In particular, the Plaintiffs allege that the Defendants made the following false or misleading statements on their website, www.unir.edu:

- That the Defendants have "multiple campuses in Latin America";
- That the Defendants' educational program offers a "Global Network" and that the Defendants' educational program "graduated 40,000 students worldwide";
- That UNIR was "born in 2020 as a branch of Atlantis University and that the institution has a long history that dates back to 1975";
- That a student testimonial stated that the student had a "successful career in the United States thanks to UNIR University."

(ECF No. 20 at ¶¶ 56, 59, 72, 75–77.)

To state a claim of false advertising under the Lanham Act, a plaintiff must allege that "(1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been—or is likely to be—injured as a result of the false advertising." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260–61 (11th Cir. 2004). In particular, to allege that advertisements were false or misleading, a plaintiff must allege that the claims are either "literally false" or "literally true or ambiguous but which implicitly convey a false impression." *Id.* at 1261. Advertisements must be read in context. *See Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1248 (11th Cir. 2002). And when assessing whether advertisements regarding schools of higher education can deceive consumers, courts may consider that potential higher-education students are "relatively sophisticated consumers who are unlikely to be easily or meaningfully confused by similar-sounding university names." *Fla. Int'l Univ. Brd. of Trustees v. Fla. Nat'l Univ.*, 830 F.3d 1242, 1256 (11th Cir. 2016).

The Court holds that the Plaintiffs have not sufficiently pled a claim for false advertising. **First**, the alleged statement that the Defendants have "multiple campuses in Latin America" is not literally false nor does it convey a false impression as alleged. However, the advertisement does not state that the Defendants operate multiple campuses in Latin America. Rather, the advertisement on the Defendants' website reads, in relevant part, that UNIR Venezuela "expanded into an urban, multi-campus college serving the Latin American community[.]" (ECF No. 24-1.) That statement, as alleged, is true— UNIR Venezuela operates a campus in Maracaibo, Venezuela and the alleged affiliate, UNIR, now operates a campus in Miami. (ECF No. 20 at ¶¶ 20, 59.)

Thus, there are multiple campuses, and each can be said to be serving the Latin American community, whether in Maracaibo or Miami.

**Second**, the alleged statement that the Defendants operate a "Global Network" and that the Defendants' education program "graduated 40,000 students worldwide" is not false nor does it convey a false impression as alleged. The statements above refer to UNIR Venezuela, and the Plaintiffs have provided no allegations that the above are literally false.[1] As noted above, UNIR and its alleged affiliate UNIR Venezuela have campuses in Maracaibo and Miami, which alone suffices to establish a "global network." The Plaintiffs also argue that the statement that UNIR has graduated over 40,000 students is literally false, as UNIR only opened in 2020 and cannot have graduated over 40,000 students. However, the statement is clear that it is referring to UNIR Venezuela. In context, the statement reads that "[UNIR Venezuela] started an educational venture offering career-focused programs . . . and graduating over 40,000 students living and working worldwide." (ECF No. 24-1.) As the statement is sufficiently clear as to which institution it is referring, it does not convey a false impression regarding how many graduates UNIR has produced. *See Johnson & Johnson*, 299 F.3d at 1248 ("[A] court must analyze the [advertisement] conveyed in full context.") (quoting *Castrol Inc. v. Pennzoil Co.*

**Third**, the alleged statement that UNIR was "born in 2020 as a branch of Atlantis University" and that the institution has "a long history that dates back to 1975" is not literally false nor does it convey a false impression as alleged. The gravamen of the Plaintiffs' claim is that UNIR has only been operating since 2020, not 1975 (*see* ECF No. 20 at ¶ 77), but the statement clearly claims that UNIR's history goes back to 1975, when UNIR Venezuela allegedly began using the term UNIR. (ECF No. 20 at ¶ 30.) The Defendants' website makes no claim that UNIR itself began in 1975, and the Plaintiffs have not alleged that UNIR Venezuela and UNIR are not affiliated in a manner to make the above statement misleading.

**Last**, the Defendants' alleged testimonial where a student stated that he has a "successful career in the United States thanks to UNIR University" is not false nor does it convey a false impression as alleged. This is a statement of opinion, which is only actionable under the Lanham Act if the statement "impl[ies] a false factual basis for the opinion." *See Taslidzic v. Luther*, No. 9:18-cv-88038, 2018 WL 3134419, at *5 (S.D. Fla. May 18, 2018) (Reinhart, M.J.) (quoting *Advisors Excel, LLC v. Scranton*, 2014 WL 12543802, at *4 (S.D. Fla.

---

[1] The Plaintiffs allege that UNIR Venezuela's website does not make these claims. (*See* ECF No. 32 at 18.) Merely alleging the absence of similar statements on UNIR Venezuela's website does not make the falsity of such claims more plausible or render the statements more capable of giving a false impression.

Sept. 16, 2014)). An opinion implies a false factual basis where it "give[s] consumers the impression that it describes actual facts . . . [or] activities." *Id.* The Plaintiffs complain that as UNIR was not accredited until February 2021, no student could give a testimonial concerning a successful career "thanks to UNIR." (ECF No. 20 at ¶ 76.) However, the testimonial continues, stating that "[m]y dreams began to come true when I started studying my Master's degree." (ECF No. 24-1.) When read in context, the statement does not suggest that it describes actual facts (such as that the student graduated or that the student meets any quantifiable metrics of a successful career). Rather, it only describes an opinion concerning what the student believes to be a successful career, and it states the fact that the student began studying a Master's degree at UNIR. This statement as alleged is not literally false or capable of giving a false impression.

Furthermore, the Plaintiffs do not sufficiently allege that any of the four statements discussed above deceived or have the capacity to deceive. While the Plaintiffs need not submit proof of deception at the pleading stage, the Plaintiffs must allege non-conclusory facts that make deception plausible. *See Strong Current Enter. Ltd. v. Affiliati Network, Inc.*, No. 20-cv-23692-UU, 2021 WL 1383369, at *4 (S.D. Fla. Jan. 26, 2021) (Ungaro, J.) (holding that the plaintiff did not allege any facts to support the alleged deception at issue). The Plaintiffs press that potential students could be deceived by the statements above with regard to their educational enrollment decisions. (ECF No. 20 at ¶ 78.) But students considering higher-education programs are legally held to be a more sophisticated consumer, given the cost and importance of higher education. *See Fla. Int'l Univ. Brd. of Trustees*, 830 F.3d at 1256. For this reason, the Plaintiffs' conclusory assertions that potential students would have been deceived by statements concerning the size and history of UNIR do not satisfy the Rule 8 threshold.

Moreover, the Plaintiffs have not alleged that these statements were material. A plaintiff must allege that the deceptive statement "is likely to influence the purchasing decision." *See Johnson & Johnson*, 299 F.3d at 1250. Given the sophistication of an average consumer of higher education, the statements concerning the size and history of UNIR discussed above are unlikely to materially influence a potential student's choice in where to matriculate. Rather, sophisticated consumers looking at potential schools of higher education would likely look to the types of degrees offered, the quality of those degree programs, the nature of the campus community, and the statistics concerning graduation rates and job placements. *Cf. Fla. Int'l Univ.*, 830 F.3d at 1262 (discussing the differences in the degrees offered and the composition of the student body when determining whether there was a

likelihood of confusion between two schools of higher education). Here, the Plaintiffs point only to general statements concerning the size, reach, and history of UNIR. Such general statements concerning ancillary components of a higher-education program are unlikely to influence a sophisticated consumer's purchase.

For the reasons above, the Plaintiffs have not adequately alleged a claim for false advertising under the Lanham Act.

### B. Cybersquatting (Count III)

The Plaintiffs' third cause of action alleges that the Defendants registered the domain name www.unir.edu in order to profit in bad faith from the goodwill of the Marks and to divert consumers from the Plaintiffs' website, www.unir.net. (ECF No. 20 at ¶¶ 98, 102, 104.)

The Anticybersquatting Consumer Protection Act ("ACPA") was enacted in 1999 to prevent a "land grab" over Internet domain names. *See S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1246 (11th Cir. 2009). In particular, Congress sought to address the practice of purchasing domain names—containing a protected mark—with a "bad faith intent to profit," by either reselling the domain name to the legitimate owner of the mark or by diverting consumers to the defendant's website and away from the mark's owner's website. *See id.* at 1246–47 (collecting cases). To state a claim under the ACPA, a plaintiff must allege that "(1) its mark is a distinctive or famous mark entitled to protection, (2) the defendant's domain names are identical or confusingly similar to the plaintiff's marks, and (3) the defendant registered the domain names with the bad faith intent to profit from them." *PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1219 (S.D. Fla. 2004). The Act provides a list of nine factors that courts may consider when determining whether a defendant had a "bad faith intent to profit." *See* 15 U.S.C. § 1125(d)(1)(B)(i). However, these factors are non-exclusive, and courts look to the "unique circumstances" of each case. *See Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1223 (11th Cir. 2012).

While the Plaintiffs make conclusory allegations that the Defendants used www.unir.edu to divert traffic away from the Plaintiffs' domain, the unique circumstances of this case, as alleged by the Plaintiffs, establish that the Plaintiffs did not adequately plead a bad faith intent to profit. As alleged, the Defendants own a ".edu" top-level domain. (ECF No. 20 at ¶ 102.) This factor alone heightens the burden of alleging a bad faith intent to profit. As noted above, the ACPA largely concerns itself with domain "land grabs"—the staking out of cyber property with the bad faith intent to profit. *See S. Grouts*, 575 F.3d at 1246. Obtaining an ".edu" domain name does not involve a rush to

grab and hold on to a website domain; rather, only U.S.-based, licensed, and accredited postsecondary institutions can register to receive a ".edu" top level domain. (*See* ECF No. 24-6.) Given the restrictions on obtaining a ".edu" top level domain, the ability of a defendant to grab such a domain with a bad faith intent to profit is lessened. Moreover, the third and sixth § 1125(d)(1)(B) factors concern, in part, the bona fide offering of goods or services in connection with the disputed domain. *See* 15 U.S.C. § 1125(d)(1)(B)(iii), (vi). The Plaintiffs allege that the Defendants used the UNIR mark at issue for "online educational services" on www.unir.edu and that the Defendants offer, in relevant part, four degree programs, which they promote on www.unir.edu. (ECF No. 20 at ¶¶ 55, 58, 64.) There are no allegations that Defendants do not offer the services that they advertise. Therefore, the Plaintiffs allege that the Defendants provide bona fide educational services on a domain that they acquired only after they met specific prerequisites. For these reasons, the Plaintiffs have not adequately alleged that the Defendants acquired and operated www.unir.edu within the narrow confines of the ACPA.

### C. Common Law Unfair Competition (Count V)

The Plaintiffs' fifth cause of action is for common law unfair competition. The Defendants seek to dismiss this claim on the same grounds as Count II, arguing that the elements of a common law unfair competition claim are the same as the elements of a false advertising claim under the Lanham Act. (ECF No. 24 at 3.)

In general, the elements of a state law unfair competition claim and a Lanham Act claim are "tied." *See Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes and of Malta v. Fla. Priory of the Knights Hospitallers*, 702 F.3d 1279, 1296 (11th Cir. 2012). But claims of unfair competition are diverse, and there is "no single set of elements that apply uniformly to all claims of unfair competition." *Tobinick v. Novella*, 142 F. Supp. 3d 1275, 1282 (S.D. Fla. 2015) (Rosenberg, J.) (internal quotations and citations omitted). Therefore, courts apply "elements from other established claims to unfair competition claims, where appropriate, on a case-by-case basis." *See id.*

While in some cases the elements of a state-law unfair competition claim may mirror those of a false advertising claim under the Lanham Act, the Court finds that Count V arises out of a different set of arguments than the false advertising claim. While the Plaintiffs' false advertising claim asserts that the Defendants made false or misleading statements on their website, the unfair competition claim asserts that the Defendants have used a confusingly similar mark in a manner that misleads the public and misrepresents the services

offered. (*See* ECF No. 20 at ¶¶ 87, 121.) Therefore, as Counts II and V each deal with separate facts and legal arguments, a different set of elements applies. Namely, the Court holds that the Plaintiffs must allege that (1) the plaintiff is the prior user of a protected mark, (2) the mark is arbitrary or suggestive or has acquired secondary meaning, (3) the defendant is using a confusingly similar mark in relation to similar services in the same trade area in which the plaintiff has already established its mark, and (4) as a result, consumer confusion as to the source or sponsorship of the defendant's good or services is likely. *See PetMed Express*, 336 F. Supp. 2d at 1219. As the Defendants did not argue that the Plaintiffs failed to allege these elements, the Court denies the Defendants' motion to dismiss Count V.

### D. Lumping Defendants

The Defendants seek to dismiss the amended complaint on the grounds that the Plaintiffs impermissibly "lump" the Defendants together in their factual allegations. The Defendants label the amended complaint a "shotgun pleading" (ECF No. 34 at 5), which is "calculated to confuse" and fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320–23 (11th Cir. 2015). The Eleventh Circuit has held that "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" is improper. *Id.* at 1323.

However, the amended complaint gives the Defendants adequate notice of the claims against them. Indeed, the Plaintiffs specify the actions of the individual Defendants at times. (*See* ECF No. 20 at ¶¶ 47, 99, 100.) But while the Plaintiffs largely lump the Defendants together, that is because the defendants, as alleged, are related and took certain action together. (*Id.* at ¶¶ 9–13); *see In re Zantac (Ranitidine) Prods. Liab. Litig.*, 20-MD-2924, 2021 WL 2682659, at *23 (S.D. Fla. June 30, 2021) (Rosenberg, J.) (holding that alleging counts against related defendants did not impermissibly lump defendants together). As the Defendants have adequate notice of the claims against them, the Court will not dismiss the amended complaint as a shotgun pleading.

### E. Failure to Join Indispensable Party

The Defendants next argue that the case should be dismissed for failure to join an indispensable party—Marconi. Failure to join an indispensable party is appropriate under Rule 12(b)(7) where (1) the party is required under Rule 19 and (2) joinder is feasible. *See Molinos Valle Del Cibao, C. por A. v.*

*Lama*, 633 F.3d 1330, 1344 (11th Cir. 2011). A party is required to be joined where a court cannot grant complete relief in the non-party's absence, the non-party would be prejudiced in protecting itself in the suit, or there is a "substantial risk" that the parties would incur inconsistent or duplicative obligations. *See State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC.*, 278 F. Supp. 3d 1307, 1331 (S.D. Fla. 2017) (Moore, C.J.).

Marconi is not an indispensable party. The Plaintiffs allege that Marconi is a subsidiary of Proeduca and is authorized to use the Marks. (ECF No. 20 at ¶¶ 15, 19, 44.) Proeduca offers U.S. degrees only through Marconi, which Proeduca acquired in early 2019. (*Id.* at ¶¶ 15, 42, 45.) The Defendants primarily argue that failure to join Marconi, which the Plaintiffs do not argue is infeasible, would put the Defendants at risk of a future separate lawsuit by Marconi asserting the same claims. (ECF No. 34 at 6.) However, this is largely speculative and does not amount to a "substantial risk" of inconsistent or duplicative obligations. *See State Farm Mut.*, 278 F. Supp. 3d at 1331. For these reasons, the Court denies the Defendants' motion to dismiss for failure to join an indispensable party.

### F. Motion to Stay

The Defendants argue that the Court should stay this proceeding pending the conclusion of a matter between the parties currently before the Trademark Trial and Appeal Board. In general, courts consider three factors when determining whether to stay cases pending US Patent and Trademark Office proceedings: (1) whether the stay would "unduly prejudice or present a clear tactical disadvantage" to the nonmoving party; (2) whether the stay would simplify the issues at hand; and (3) whether the case timeline has advanced. *See Rothschild Storage Retrieval Innovations, LLC v. Motorola Mobility LLC*, No. 14-22659-Civ, 2015 WL 12715618, at *1 (S.D. Fla. May 11, 2015) (Scola, J.).

The Court finds that a stay is not warranted. First, the Plaintiffs could be prejudiced by a stay, as the Plaintiffs would have to wait indefinitely while the TTAB proceeding concluded. *See Deltona Transformer Corp. v. Noco Co.*, 2019 WL 5390476, at *10 (M.D. Fla. Sept. 16, 2019) (denying stay pending TTAB proceeding, as the stay could cause the plaintiff to "wait years before having its day in court"). Second, while a TTAB decision on priority could simplify the issues, other issues remain before the Court, such as the Plaintiffs' state and federal unfair competition claims. Moreover, the TTAB's decision could be appealed and heard de novo in a district court. *See id.* at *12 (noting that a TTAB decision is not dispositive as it is subject to de novo review). Last, while the instant case has not advanced beyond the pleadings, it does not appear

that the TTAB proceeding is sufficiently advanced to weigh heavily in favor of a stay. The Defendants argue that discovery is nearing an end in the TTAB proceeding, although some discovery remains, perhaps due to the Plaintiffs' tactics. (ECF No. 34 at 14.) However, this is not similar to *Tigercat Int'l*, where the court granted a stay and found compelling that the TTAB proceeding had been pending for three years and that the parties had conducted extensive discovery over those years. *See Tigercat Int'l, Inc. v. Caterpillar Inc.*, No. 16-cv-1047-GMS, 2018 WL 2049816, at *5 (D. Del. May 2, 2018). Here, it appears that discovery in the TTAB matter was initiated at the end of February 2021; therefore, the parties' discovery in the TTAB proceeding has not taken years as it had in *Tigercat Int'l*. *See id.*; (ECF No. 33-3 at 7.)

For these reasons, the Court does not find a stay to be warranted.

### 4. Conclusion

For the reasons discussed above, the Court **grants in part and denies in part** the Defendants' motion. (**ECF No. 24**.)

**Done and ordered** at Miami, Florida on December 1, 2021.

_____
Robert N. Scola, Jr.
United States District Judge